## CENTRAL LIFE INSURANCE SOCIETY v. PYBURN.

No. 11171—Opinion Filed Oct. 30, 1923.

Rehearing Denied Feb. 5, 1924.

**1. Insurance — Waiver of Advance Payment of Premium—Powers of Agent.**

Where the contract of agency given to an agent to sell insurance authorizes the agent to take applications for insurance without requiring the first year's premium to be paid in advance, such provision authorizes the agent to extend credit to applicants for insurance, or to waive the payment in advance of the first premium, and the company is bound by the acts of its agent.

**2. Same.**

An oral agreement entered into by the agent of the company and the applicant for life insurance whereby the agent waives payment, or extends credit to the applicant in the payment of the first year's premium, is, when made in good faith, binding upon the parties thereto and the company, where the contract of agency authorizes the agent to accept applications for insurance without requiring payment of first year's premium.

**3. Same—Delivery of Policy—Necessity.**

When a contract upon which an insurance policy is based provides that the contract of insurance shall not take effect until the application, together with a medical examination, has been approved at the home office of the society, and the first premium has been paid, during the continued good health of the applicant, delivery of the insurance policy to the insured during his lifetime is not a condition precedent to the taking effect of the insurance and to the validity of the policy. And the cash payment of the first year's premium may be waived or credit extended by an agent authorized to do so.

**4. Trial — When Directed Verdict Authorized.**

Section 572, Compiled Statutes 1921, provides that "A new trial shall be granted where the verdict, report or decision is not sustained by sufficient evidence, or is contrary to law." And where the evidence is such that it would clearly be the duty of the trial court to set aside a verdict for the defendant, it is not error to direct a verdict for the plaintiff.

**5. Same.**

If the evidence on behalf of the plaintiff is sufficient to prove his cause of action, and there is no substantial evidence offered by the defendant upon any material issue in the case, it is not error for the trial court to instruct the jury to return a verdict for the plaintiff. (Syllabus 4, Cockrell et al. v. Schmitt, 20 Okla. 207, 94 Pac. 521.)

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Garvin County; F. B. Swank, Judge.

Action by Beulah Pyburn against Central Life Insurance Society. Judgment for plaintiff, and defendant appeals. Affirmed.

Everest, Vaught & Brewer, for plaintiff in error.

Bowling & Farmer, for defendant in error.

Opinion by JONES, C. On the 13th day of November, 1918, Benjamin H. Pyburn, made application for insurance through J. M. Dewese, the duly authorized agent of the company, plaintiff in error, defendant in the trial court, and submitted to a medical examination on the same date. On December 3, 1918, a policy of insurance was issued by the company at its home office in Des Moines, Iowa, the application and medical examination having theretofore been approved. The policy was mailed to the agent Dewese, at Bradley, Oklahoma, and received by him on December 6, 1918, and on his way to Lindsey on December 7, 1918, he learned of the death of Pyburn, and on his arrival there called C. M. Pinkerton, state manager for said company, by phone, and advised him that Pyburn had died, and that he, Dewese, had the policy, whereupon he was advised by Pinkerton that the policy would be paid, and for him to wire the company for blanks upon which to make proof of death, which he did. The applicant, Pyburn, died December 5, 1918, at Lindsay, Okla., and on December 7, 1918, the agent, Dewese, presented the policy to Tipp Watts, of Lindsey, the former employer of the deceased, who at that time gave his check to Dewese in payment of the first premium on said policy, which was received by the agent, placed in the bank to his credit, and he, Dewese, mailed his check to the company for the amount due them for the first year's premium; after about 20 to 30 days the company, plaintiff herein, mailed to Watts its draft for the full amount of said premium, refusing to accept same. At the time the application was taken on November 13th, Mr. Pyburn stated to the agent, Dewese, that he was not able to take out insurance right at the time and wished to defer the matter, whereupon the agent, Dewese, told him that he would take care of the payment if he would take the insurance out at that time, and that he, Pyburn, could pay the premium out in monthly installments; the agent, Dewese, further assured him that he would take care of the payment to the company, and with this agreement the application was given, followed by the necessary medical examination. The insurance policy was issued on December 3rd, acknowledging the receipt in full of payment of the first premium, and was mailed to the agent, Dewese, on December 3rd unconditionally, so far as the record discloses.

The contract of agency between the company and Dewese whereby he was employed to sell insurance, contains the following provision:

"The agent may take and forward applications from responsible parties who have not paid the first year's premium. If the application is accepted the company shall forward the policy issued upon said application to the agent, to be delivered to applicant upon payment by the applicant of the entire first year's premium to the agent. The agent shall thereupon immediately remit to the company the net premium due it when received in cash; in all other cases within not less than 60 days from the date of issuance of the policy but if unable to deliver said policy, the agent shall return same to the home office within 60 days, and shall be credited with the same as not taken."

And the application, the contract which is the basis of the policy of insurance, contains the following provisions:

"I hereby agree that this application, and the policy hereby applied for, taken together, shall constitute the entire contract between the parties hereto. I hereby represent that all the answers made to the above questions, and those that shall be made to the medical examiner, are true, and form the basis of the contract, and that this contract shall not take effect until the application, together with a medical examination, has been approved at the home office of the society, and the first premium has been paid during my continued good health."

These are the material facts in the case, and are uncontradicted, and are the facts upon which the rights of the parties to this controversy must stand or fall.

The facts, as above stated, disclose that the premium was not paid at the time the application was taken, but that an agreement was made by the agent, Dewese, and the applicant, Pyburn, whereby credit was extended by the agent to the applicant for the first year's premium which was within the scope of the agent's authority; and was binding upon the company.

There is seemingly conflict of authorities on this question, but we think the better reason and weight of authority support this principle.

Rev. Laws 1910, section 3462 (section 6723, Comp. Stat. 1921), provides:

"Any person who shall solicit and procure an application for insurance, shall in all matters relating to such application for insurance, and the policy issued, in consequence thereof, be regarded the agent of the company issuing the policy * * * and not the agent of the insured, and all provisions in the application and policy to the contrary, are void and of no effect whatever." Federal Life Ins. Co. v. Whitehead, 73 Oklahoma, 174 Pac. 784.

Cooley's Brief on the Law of Insurance, volume 4, page 480, says:

"(i) The actual payment of the first premium at the time of making the contract of insurance is not necessary. The company may extend a credit for a premium, and if it does so, the contract will be binding without actual payment of the premium."

See DeCamp v. New Jersey Life Insurance Co., 7 Fed. Cas. 313, wherein the court held:

"A delivery of the policy by the agent, without exacting the premium, and upon the promise of the assured to pay in a few days, makes a binding contract from the date of delivery (which would be the date of approval in this case), subject only to the payment of the premium; and, if payment is in fact made within the time named, the insured is not bound to disclose to the insurer the fact of a change for the worse in the condition of health, which has taken place in the mean time. Nor is it material that the agent never accounts to the company for the premium so received."

The agreement extending credit was not definite as to time, but this is not material to the issues in this case, because the law would give a reasonable time in which to make settlement, and for the further reason that the premium was promptly paid on presentation of the policy, and certainly within the time contemplated by the parties.

Cooley's Brief on the Law of Insurance, volume 1, page 476, says:

"If no time is fixed by an insurance company within which a proposition to insure must be accepted, and the premium paid, the law fixes a reasonable time for tender of premium."

See Chase v. Hamilton Mutual Ins. Co., 22 Barb. (N. Y.) 527, in which the court held that the contract was fully completed between the parties when the plaintiff accepted the company's terms, and paid the premium to A., and that the company was bound to issue a policy to the plaintiff, and was liable for a loss which had occurred. Held, also, that no time being fixed by the company

within which the proposition was to be accepted and the money sent, the law would fix a reasonable time. And that accepting the proposition and paying the premium by the plaintiff through the agent, the next day after being notified of the offer, was within a reasonable time. Held, further, that if the money was paid to the agent before the loss occurred, it was sufficient, although it was not forwarded to the company, by the agent, until after the happening of the event.

The facts further disclose that the policy was never, in fact, delivered to the assured, but this is not material, because the contract, which is the basis of the insurance policy, provides that the contract of insurance shall not take effect until the application, together with a medical examination, have been approved at the home office of the society, and the first premium paid during the continued good health of the applicant. The condition precedent, upon which the validity of this contract depends, is the payment of the premium during the continued good health of the applicant, and the approval of the application and medical examination at the home office of the society, and not the delivery of the policy.

Cooley's Brief on the Law of Insurance, volume 1, page 468, also states:

"(e) Where the terms of a contract of insurance have been agreed upon, so that it commences to run before loss, a recovery may be had thereon, though the premium be not actually paid until after loss, if a credit therefor be given, either expressly or impliedly, and its actual payment is not by the contract made a condition precedent to the attaching of liability."

See 7 Fed. Cas. 313, supra, in which the court said:

"But if credit for the premium is given when the policy is delivered, and payment is in fact made within the time named, the insured is not bound to disclose to the insurer the fact of a change for the worse in the condition of his health, which has taken place in the meantime."

In Insurance Company v. Gillman, 112 Ind. 7, 13 N. E. 118:

"It is said to be well settled that the payment of the premium in cash may be waived by an agent authorized to deliver policies and receive payments; notwithstanding a stipulation in the policy to the contrary, and that unless a policy so delivered is voided by showing bad faith or collusion, it is enforceable; also that, if credit has been extended by the agent to the assured, it is a sufficient payment to the company to support the policy."

The American Bankers Insurance Company v. Thomas, 53 Okla. 11, 154 Pac. 44, cited by plaintiff in error and relied upon as an authority in this case, is distinguishable for the reason that in the Thomas Case the policy provided that it should not take effect until the same has been issued and delivered, while in this case the contract of insurance was consummated on the approval of the application and medical examination at the home office of the company, and the case at bar is further distinguishable in that, in the Thomas Case no credit was extended for the payment of the first year's premium.

In this case there was a satisfactory settlement of the first year's premium during the continued good health of the applicant, and the application and medical examination was approved prior to the death of the assured. Hence the contract of insurance was in full force and effect on the date of the assured's death.

The second question discussed in brief of plaintiff in error, and raised by fourth assignment of error, to the effect that the court committed error in instructing a verdict for defendant in error, plaintiff below, on the theory that there was a conflict in evidence on material issues raised by the pleadings, we think is not well taken, because there is no conflict or contradiction as to the facts upon which this opinion is based. And it is a well settled rule in this court that it is not error to sustain a motion for instructed verdict where the evidence on the material issues in the case is sufficient and uncontradicted.

Wherefore, finding no material error, the judgment is affirmed.

By the Court: It is so ordered.