## MOORE v. LA SALLE EXTENSION UNIVERSITY.

No. 19795. Opinion Filed Nov. 25, 1930.

Sam S. Gill and W. C. Hodges, for plaintiff in error.

Clarence M. Mills, for defendant in error.

BENNETT, C. Defendant in error, plaintiff below, sued plaintiff in error, defendant below, to recover on a promissory note for $95 and interest. At the conclusion of the evidence, the court upon motion of plaintiff, directed a verdict in his favor, and from judgment thereon defendant appealed. The question presented is as to the correctness of this action of the trial court.

The petition was in the usual form, and prayed for recovery against defendant on said promissory note, a copy of which was attached to the petition and made a part thereof and marked exhibit "A." This exhibit is as follows:

"$105.00      May 4th, 1925,      No.518493

"For value received, I promise to pay to the order of LaSalle Extension University, the sum of one hundred and five and no /100 dollars, ($105.00), payable at LaSalle Extension University, Michigan Avenue at Forty-first, Chicago, in monthly installments of ten and no/100 dollars ($10.00) each, on the 1st day of each and every month beginning with August 1, 1925, until paid.

"Name, R. P. Moore,

"Street Address, 221 Harrison Ave.,

"City & State, Oklahoma City, Okla."

Defendant denied liability, but alleged that he signed the note in question, together with certain other papers and delivered the same, together with $25, to plaintiff's agent as the purchase price for certain books of

instruction, etc. It was understood that the books of instruction, etc., were to be sent to defendant in installments, and that if the defendant, upon receipt and inspection of the first installment, did not approve the same, there would be no obligation on the note and accompanying papers, and that the same should be returned to defendant and the books to plaintiffs, but the $25 should be retained by plaintiff. The books were promptly sent to defendant, who examined same and informed said agent that he did not desire them, and asked for the return of his note. The note was not returned, but the agent represented that it would be attended to. It was alleged that defendant returned said books and papers to plaintiff by express on July 9, 1926. For reply plaintiff filed a general denial.

The defendant assumed the burden of proof and testified, in substance, that after several conversations with reference to the purchase of a correspondence course from plaintiff, the agent proposed to defendant that he should sign a note and some other papers and pay the agent $25, and agreed that all said papers would be held by him in Oklahoma City until certain books, papers, etc., were forwarded by plaintiff to the defendant for examination, and, if the same were not satisfactory, the note would be returned, but that plaintiff would retain the $25; whereupon defendant signed the note and paid the agent $25, either at one time or $15 at one time and $10 later, and that the latter payment might have been made in January, 1926; that upon examination of the books, papers, etc., defendant decided not to take them, and so informel the agent, and that he wished his note back; that the agent stalled him off about the return of the note, and thereafter the agent left the city; that he had some correspondence with plaintiff in which he explained the situation, and finally expressed all papers back July 9, 1926.

On cross-examination, defendant admitted the signing of the note, also exhibit "B," of which the material parts pertinent here are as follows:

"In consideration of your agreement to furnish me with the textbooks and complete course of instruction in traffic management as indicated above, I agree to pay to LaSalle Extension University at Chicago, Ill., or order, the sum of $120, payable as indicated below.

"Note—All payments (except first payment, which should be made to the registrar at the time of giving application) are to be sent by mail to the order of LaSalle Extension University, Chicago. This enrollment is not subject to revocation. No verbal modifications or representations, except as herein expressed in writing, will be recognized, and no reduction in fees will be made on account of withdrawal. In the event of any one payment becoming delinquent 90 days without special consent of the University, the unpaid balance becomes immediately due and payable. All correspondence, inquiries, and matters relating to the course of instruction should be addressed to LaSalle Extension University, Michigan Avenue at Forty-First, Chicago, Illinois.

"Cash Received $15.00. Check.

"Name R. P. Moore

"Age 23 yrs

"Balance Payable $10.00 per month.

"Occupation Expressman Firm American Express Company.

"Education H. S.

"Business } Oklahoma City Oklahoma
"Address }

"Residence } 221 Harrison Avenue
"Address } Oklahoma City Oklahoma

"Send first } Residence address
"Material to }

"Send all other } Residence address
material to }

"E. E. Hodgins, Registrar.
"Date May 4, 1925."

After identifying the note and this accompanying paper writing, defendant testified that both the writings were signed at the same time, as part of the same transaction, and that he read the instruments at the time of signing. Exhibit "C" is a receipt from the American Railway Express Company issued at Oklahoma City, Okla., July 9, 1926, for the books, papers, etc., to be transmitted to plaintiff at Chicago.

The manager of plaintiff's department of accounts testified, in substance, that, on May 6, 1925, the University received through the mails a remittance in the amount of $15, the said promissory note, and the application for enrollment in the traffic management course of the plaintiff; that the note and application bore the signature of defendant; that the application was immediately accepted and so stamped. Witness sent to defendant at his proper address the initial material in connection with the traffic management course, together with the first two lesson assignments, and arranged for the balance of the material to be forwarded to him at regular intervals according to the regular custom of plaintiff; defendant was properly matriculated and enrolled in

the University in said traffic management department; that his name was placed on the various mailing lists, and he was assigned to an instructor so that lessons, instructions, and consultation service could and would be rendered him.

Defendant introduced without objection evidence that certain correspondence between plaintiff and defendant was missing, but that the original record card of plaintiff shows the substance of that correspondence, and the same is as follows: On November 13, 1925, defendant wrote to the University saying that he had no time to study, that his father had died, and that he would pay $25 and quit. To this letter the University replied that his contract was not subject to cancellation. On December 29, 1925, defendant again wrote to the University stating that he would start paying on his obligation January 16, 1926. The University replied to this letter advising that this arrangement would be agreeable. In addition to the foregoing, the manager of plaintiff testified that the defendant paid $10 on his note and contract on January 23, 1926; also, that the books, etc., were returned by express by the defendant July 9, 1926, and that the University then wrote defendant that the material would not be accepted, but would be placed in storage at defendant's risk and held subject to his instructions.

The assistant manager in the operating unit of plaintiff corroborated the evidence of the manager with respect to the receipt of the note and application, and plaintiff's action thereon, and also as to forwarding of instruction material at regular intervals to the defendant. This witness testified that 44 out of the 47 consignments of lessons and instruction material were sent to defendant, the last or 44th consignment being mailed out about April 5, 1926. The three remaining consignments were held subject to the call of defendant; that these materials mailed out were the exact instructions and material called for in the contract; that none of the same were returned until July 17, 1926, and that the returned material and the three last consignments have been held subject to defendant's order. She further testified that instructors were held in readiness at all times to render the contract service to the defendant.

Was the action of the court in directing a verdict under this evidence error? There is nothing ambiguous about this promissory note, or the contract which was executed therewith as a part of the same transaction. The promissory note calls for the payment of $105 in monthly installments of $10 each on the first day of each and every month beginning with August, 1925. Under the terms of exhibit "A," the sum of $120 was payable as follows:

"All payments, (except first payment, which should be made to the registrar at the time of giving application) are to be sent by mail to the order of LaSalle Extension University," etc.

This document provides also:

"This enrollment is not subject to revocation. No verbal modifications or representations, except as herein expressed in writing will be recognized, and no reduction in fees will be made on account of withdrawal."

This document also provides that the balance ($105) should be payable $10 per month. Both writings are dated May 4, 1925. While defendant's oral evidence might be construed to indicate that he was to pay the agent $25 at the time of making application, nevertheless, when his evidence is read in connection with the two paper writings which he executed, we think it would appear clear that the first payment was to be and was $15, and that the other payments were to be made monthly beginning August 1st thereafter. It will be observed that under his testimony he received the shipments of books and instructions perhaps about the middle of May and retained them until the second July thereafter. It will be observed, too, that from the date of the receipt of the first papers there were sent to him regularly consignments of instructions and lessons. Forty-four of such consignments were sent to him, the last being in April, 1926, and only the last three consignments were withheld, and these were held subject to his order. It is to be noted, too, that his first written objection indicates a wish to withdraw from the contract because his time was entirely taken up and on account of the death of his father.

When this offer of withdrawal was not acceptable to the plaintiff, the defendant wrote plaintiff that he would begin payments about January 16th and, in fact, he remitted a payment a week after that time. Under the evidence this promise to begin payments was made long after he had made his examination of the documents, long after he was free from the pressure of the registrar, and, so far as appears, entirely free from pressure elsewhere, and at a time when a greater part of the weekly consignments had been received and retained by him. This proposal met the ready and favorable response of plaintiff, who continued to furnish

the data and instructions according to contract. This $10 payment was made to the plaintiff, and not to the agent, or for his benefit. The note and contract provide clearly for monthly payments of $10 per month payable to the plaintiff. It seems to us that no fair construction can be given the payment of January 23rd other than that it was one of such monthly payments. This conforms to the note and contract, and also to defendant's written promise to begin payments in January.

We have, therefore, in this case, a clear unambiguous contract in writing, providing in terms that it is subject to no verbal modification or representations, entered into by a man who was not only able to read, but who did read and thereafter sign the contract, without overreaching, mistake, or fraud. The only defense is that there was no delivery. It is true, of course, that a note may be delivered by the maker to the payee, subject to the condition that it will not become binding except upon a certain contingency, and many cases follow this well-known rule. Burke v. Dulaney, 153 U. S. 238, 14 Sup. Ct. Rep. 816; Republic Nat. Bank of St. Louis, Mo., v. First State Bank of Oilton, 110 Okla. 299, 237 Pac. 578; Redwine v. Cummins, 108 Okla. 39, 233 Pac. 418.

Is that rule applicable here? The defendant claimed only the right of examination and approval or disapproval of the first shipment. He examined the shipment, and at first disapproved, but, at the suggestion of the registrar, he retained the same for further examination. Several months later he promised to begin his payments and did begin his payments after assigning reasons for his default in his prior payments other than dissatisfaction with the material. The defendant received the initial and complete first installment of books, instructions, etc., about the middle of May, 1925, and at regular intervals thereafter he received similar consignments without protest, other than as noted hereinbefore, up until April 5, 1926, at which time 44 out of the 47 consignments had been sent to and retained by defendant. The remainder were held subject to his call. These articles were not returned until July, 1926.

The evidence as to what defendant wrote plaintiff as to his reasons for wishing to discontinue the contract and his subsequent promise to begin payments in January, and his beginning of payments thereon in January, his retention of all the 44 consignments of books and instructions, and his final return of the material in July, 1926, stands undenied and unexplained in this record. There is nothing inherently improbable about this evidence. The same is strongly corroborated by the facts and circumstances. May the court disregard this unchallenged and unexplained evidence, the vital parts of which come directly or indirectly from defendant himself? We think not. In the first instance the plaintiff, in the absence of some affirmative defense, showed a clear right of recovery. There is a strong presumption that the note and contract were made upon proper consideration and were properly delivered. The defendant voluntarily assumed the burden. If he wrote in December, 1925, to the plaintiff that he would begin his payments in January and did then begin such payments, his defense would be destroyed. That fact is shown here by two witnesses purporting to quote a letter from the defendant. That proof now stands unchallenged and uncontradicted.

"When the evidence is uncontradicted, and not inherently improbable, either in itself, or when taken in connection with circumstances, the court is not at liberty to disregard it. In such a case, it is error to submit questions of fact to the jury, but the court should advise the jury of the conclusive nature of said evidence." Liberty National Bank of Pawhuska v. Kendall, 133 Okla. 140, 240 Pac. 72.

In Central Life Ins. Soc. of the United States v. Pyburn, 97 Okla. 141, 222 Pac. 683, the court, in the opinion, says:

"* * * And it is a well-settled rule in this court that it is not error to sustain a motion for instructed verdict, where the evidence on the material issues in the case is sufficient and uncontradicted."

In that case the fourth and fifth paragraphs of the syllabus read as follows:

"4. Section 572, Comp. St. 1921, provides that 'a new trial shall be granted where the verdict, report or decision is not sustained by sufficient evidence, or is contrary to law.' And where the evidence is such that it would clearly be the duty of the trial court to set aside a verdict for the defendant, it is not error to direct a verdict for the plaintiff. 5. If the evidence on behalf of the plaintiff is sufficient to prove his cause of action, and there is no substantial evidence offered by the defendant upon any material issue in the case, it is not error for the trial court to instruct the jury to return a verdict for the plaintiff. (Syllabus 4, Cockrell v. Schmitt, 20 Okla. 207, 94 Pac. 521, 129 Am. St. Rep. 737.)"

See, also, Casteel v. Thompson, Ex'x, 101 Okla. 59, 223 Pac. 148; Conwill v. Eldridge, 71 Okla. 223, 177 Pac. 79.

The action of the court might rest, too, upon the fact shown here without controversy that the defendant accepted without substantial protest the performance of all those duties resting upon the plaintiff and thereby became bound. Section 5008, C. O. S. 1921, is as follows:

"**Acts which are an acceptance.** Performance of the conditions of a proposal, or the acceptance of a consideration offered with a proposal, is an acceptance of the proposal."

Section 5013, C. O. S. 1921, provides:

"**Acceptance of benefit includes obligations.** A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known, or ought to be known, to the person accepting."

Under the admitted facts shown in this evidence, together with the uncontradicted proof as to promises by defendant and his part performance thereof, and the acceptance by him of performance by plaintiff and the retention unexplained of the material for such length of time, we could not permit a verdict for the defendant to stand, if the jury should return such verdict. We think there is no evidence which would reasonably support such a verdict, if rendered, and therefore the direction of the verdict was proper.

Defendant's whole defense rested upon his right to examine the books, etc., sent to him by plaintiff, and decide then whether or not he would go forward with the contract. His subsequent decision to abide by the contract, his payment thereon, and his long acceptance of the benefits would seem to strike down his defense and make the same now unavailable. The views expressed make it unnecessary for us to consider other interesting questions which have been given attention in the briefs.

For the reasons given, the judgment of the trial court is affirmed.

TEEHEE, HERR, DIFFENDAFFER, and LEACH, Commissioners, concur.

By the Court: It is so ordered.