## ATLAS LIFE INSURANCE CO. v. SCHRIMSHER.

No. 27136.   Feb. 23, 1937.

Rehearing Denied April 6, 1937.

Application for Leave to File Second Petition for Rehearing Denied April 20, 1937.

Rogers & Stephenson, Q. M. Dickason, and R. L. Christian, for plaintiff in error.

Sam S. Gill and Homer Caldwell, for defendant in error.

PER CURIAM.   A statement of the case follows, the parties being referred to as they appeared in the court below:

On August 19, 1933, Alonzo L. Schrimsher made written application to the Atlas Life Insurance Company, through its agent, Gordon Kendall, for a life insurance policy in the sum of $5,000. This application contained, among others, the following provisions:

"(3) That if the first premium on the insurance hereby applied for is not paid in full at the time of making this application, there shall be no liability on the part of the company under this application unless and until a policy shall be issued and delivered and received by the applicant, and the first premium thereon paid in full during applicant's lifetime and continued good health. * * *

"That only the executive officers at the Home Office of the Company in Tulsa, Oklahoma, have authority to determine whether or not a policy of insurance shall be issued on this application, consisting of Parts 1 and 2; (2) That no soliciting agent or medical examiner is authorized to accept risks or to pass upon insurability and that no statement made to or by any agent, medical examiner or other person shall be taken or considered as having been made or brought to the notice or knowledge of the Company or as charging it with any liability, unless contained in this application."

The first premium was not paid by the applicant and the policy was never delivered to him, although it was sent by the company to its agent, Kendall, as a "collect on delivery" policy, and charged to him.

The local agent of the insurance company, Kendall, and the supervisor, Woods, testified that Schrimsher was told when he signed the application that the policy would not go into effect until the first premium was paid; that numerous attempts were made to collect the first premium without success; that after such unsuccessful efforts, Kendall told Schrimsher that the policy would have to be sent back to the company, to which the applicant agreed, and that the policy was in fact returned to the company. This testimony is corroborated by the fact that several weeks after this conversation, Schrimsher made application to another insurance company for a $5,000 policy, being the identical amount of the one

which had just been returned, in which application he stated, in answer to a direct question as to how much insurance he was then carrying, that he had only $2,000 in force. The policy which he described was with an entirely different company than the defendant, and he did not list or mention the policy in question here.

During the month of July, 1934, the insurance company sent the applicant a notice for the second year's premium on the policy. This notice contained the following recitation:

"This notice does not modify any of the terms of the contract, and no payment made in pursuance of it shall be valid if policy be not in force on due date stated herein, or if made to any person or agent other than designated herein, unless in exchange for receipt with the signature of the President, Secretary, Assistant Secretary or Treasurer affixed, and counter-signed by the person to whom payment is made."

On July 19, 1934, or thereabouts, the plaintiff, after her son had first consulted with the local agent, mailed the insurance company a check for $276.40, being the amount stated in the notice. At that time the applicant had been stricken with the illness from which he died on July 23, 1934.

The insurance company received the remittance on July 23, 1934, and deposited the same in its bank account together with other funds received by the company on that date.

On July 25, 1934, two days later, the insurance company refunded this premium by mailing A. L. Schrimsher a cashier's check for the aforesaid amount.

There was evidence to the effect that the insurance company continued until October of 1934 to send statements to its agent, showing him charged with the first premium on this policy. There was also conflicting testimony as to what the agent, Kendall, said or did not say after the insured's decease, as to the validity of the policy. We deem this latter immaterial, however, in view of the agent's lack of authority, as will later appear, and also in view of the fact that the rights of the parties had then become fixed and obviously could not be altered by a tardy opinion of the soliciting agent.

Upon refusal of the insurance company to pay upon the policy, the beneficiary, Mrs. A. L. Schrimsher, brought this action to recover the sum stated therein. The case proceeded to trial, the insurance company defending upon the ground that no insurance contract had ever been made. At the conclusion of the testimony, the defendant moved for a directed verdict, which motion was overruled and a verdict was thereupon returned for the plaintiff. The order of the trial court overruling the aforesaid motion is, among other matters, assigned as error in this appeal. We think the trial court erred in such ruling, for the reasons set forth below.

1, 2. The provision in the written application which required payment of the first premium during the applicant's lifetime and continued good health was a condition precedent, without which the policy could not become effective, and the condition could not be waived by the soliciting agent unless he was authorized so to do by his principal.

This rule was announced in the second syllabus, written by the court in Etenburn v. Metropolitan Life Insurance Co., 118 Okla. 55, 246 P. 383, which states:

"Where the policy or contract of insurance provides that it is not to become effective until the first premium is paid to and accepted by the company during the lifetime of the insured, the payment of the first premium is a condition precedent; and, where the policy provides that only the proper officers at the home office of the company shall have power on behalf of the company to modify the contract of insurance or to bind the company by making any promises respecting any benefits under a policy issued, the soliciting agent of the company is without authority to waive the payment of the first premium."

The stipulation respecting payment of the first premium appeared, in the present case, in the application instead of the policy, but its binding effect is the same.

This holding is in accordance with the general law upon the subject which is summarized in 37 Corpus Juris, 403, as follows:

"A stipulation or agreement by the company and an applicant that the policy of insurance shall not take effect or be binding on the company unless the first premium is paid while the applicant is alive and in good or sound health is valid and will be given effect according to its terms; it is a condition precedent to liability on the part of the company and a performance or waiver thereof is necessary in order to render the contract of insurance effective and enforceable."

This general rule has been applied in Jones v. American Nat'l Life Insurance Co. (La.) 160 So. 428; MacKelvie v. Mutual Benefit Life Insurance Co., 287 Fed. 660, and Bradley v. New York Life Insurance Co., 257 Fed. 657. The court, in the latter case, said:

"Under the express agreement of Bradley

the insurance was not to take effect unless the first premium was paid and the policy delivered to and received by him during his lifetime and good health. The evidence, about which there is no dispute, does not show, in our opinion, either the payment of first premium or the delivery of the policy. The transaction between Bradley and the agent, Reaser, whereby a note was given for the premium, must be held to have been a private arrangement between Reaser and Bradley, concerning which the company had no knowledge, and which was in direct violation of the rules of the company and the instructions given to the agent. So far as the company is concerned, the record shows no arrangement whereby anything but cash should constitute a valid payment of the first premium. It must be conceded that there was no actual manual delivery of the policy to Bradley in his lifetime or good health, or at all. Reaser was not the agent of Bradley to receive the policy, and delivery to him was not a delivery to Bradley. Smith v. Commonwealth Life Ins. Co., 157 Ky. 146, 162 S. W. 779; Heiman v. Phoenix Mutual Life Ins. Co., 17 Minn. 153 (Gil. 127), 10 Am. Rep. 154. The making out of the policy in New York City on October 23, 1918, and the mailing thereof to the company's branch office at Des Moines, or the mailing at Des Moines to Reaser at Algona, did not constitute a delivery of the policy, as the contract otherwise provided."

With reference to the authority of the soliciting agent to waive the payment of the first premium, the court, in Carpenter v. St. Joseph Life Insurance Co. (Mo. App.) 246 S. W. 623, said:

"Now, so far as the alleged statements by the soliciting agent to the plaintiff and her relatives are concerned, they cannot be relied upon to constitute waiver, since such agent had no authority to waive. This is so even if, as plaintiff claims, the provision in the policy to that effect is not binding because the policy was not delivered. Such lack of authority appears because the evidence shows he had no such authority. He could only solicit insurance, collect the first year's premium, or take a note for it, and deliver a policy when the company gave him one for delivery. He had no authority to sign or issue policies—i. e., make contracts of insurance—and hence, could not, by waiver, make contracts that did not otherwise exist."

The opinion in Central Life Insurance Society of the United States v. Pyburn, 97 Okla. 141, 222 P. 683, does not conflict with this rule, for in that case the record showed that the contract of agency between the insurance company and its agent gave the agent express authority to extend credit.

No such authority was shown in the present case.

3. Since the agent, Kendall, was without power to waive this provision, the only subject of inquiry remaining is whether the insurance company itself waived the condition.

The plaintiff contends first that the act of the company in charging its agent with the amount of the first premium constituted a waiver of payment by the applicant. To this proposition we cannot agree.

The evidence showed that as a matter of customary practice, the agent was always charged by the company with the net amount due upon every policy sent to him, and that if the policy was not delivered to the applicant, the agent was credited with such amount, less a small service charge, upon return of the policy. This procedure was merely a bookkeeping arrangement between the company and its agent to facilitate the keeping of accounts. There was no communication of such procedure to any person outside of the company, and no reliance thereon by the applicant.

Although the definitions of waiver are myriad and conflicting, it may be said with certainty that in order to constitute a waiver, there must be an actual intention to relinquish a known right, either expressly, or by such conduct as warrants an inference of such relinquishment. 67 Corpus Juris, 299. No express waiver is claimed in this case, and surely no mere intracompany arrangement, which was never communicated to the applicant, could fairly warrant an inference of relinquishment.

The most rudimentary essential of a waiver is that the waiving party shall in some manner publish his intention to relinquish his rights, either by words or conduct. As stated in 67 Corpus Juris, 294, waiver "is a doctrine, resting upon an equitable principle, which courts of law will recognize, that a person, with full knowledge of the facts shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another."

This method of accounting of which the plaintiff complains, not even being known to the other contracting party, could not be the basis of an "injury to another." An individual cannot waive his rights by words spoken to himself, which no third person hears, or by conduct which is never seen; nor should an organization of individuals be

held to a waiver by an arrangement entirely within the entity of the organization.

We are supported in this conclusion by the case of Lyke v. American National Assurance Co. (Mo. App.) 187 S. W. 265, in which the court held that neither the charging of a premium to the agent, nor a remittance in consequence thereof by the agent to the company, constituted a waiver of the payment of the first premium as a condition precedent. The court said in part:

"The plaintiff seeks to avoid the force and effect of the failure of the insured to pay the first premium, the effect of which is that the policy never became a live contract, by showing that the defendant company had an agency contract with the agent through whom the policy was applied for by which it lost nothing by the insured's failure to pay the premium to the agent. The substance of that contract, so far as material here, is that the defendant received all applications and issued all policies within the agency territory through this agent, who collected all first premiums and retained, as his commission, a large part thereof; that when applications were received through his agency and accepted by the company, the policies were then forwarded to this agent, who delivered same and collected the first premium; that this agent was charged with the net amount of premiums due the defendant on all policies sent to him for delivery, and he must settle for same with the defendant company within 60 days from the delivery of the policy to him unless returned to the company, except that when notes were taken for the premiums he must then settle for same within 90 days. It will be readily seen that this contract was an arrangement and agreement solely between the company and its agent to facilitate and safeguard the transaction of business between them, by which the company looked to the agent, and held him responsible, for all premiums on policies delivered to him by the company for applicants and not returned to the company within the stipulated time."

Citing Whiting v. Mass. Life Ins. Co., 129 Mass. 240, 37 Am. Rep. 317, the court further said:

"As stated in the above-cited case, there was no insurance contract, because there was no meeting of the minds of the company and the insured. The settlement between the agent and the company was res inter alios acta."

4. The plaintiff further contends that the insurance company waived the condition precedent by mailing a notice of the second year's premium to the applicant, and by its subsequent receipt of the remittance therefor. These acts fall short of waiver, however, in a number of particulars.

The first is that the notice was sent without knowledge on the part of the insurance company of the illness of the applicant. It is needless to say that in order to constitute waiver, the waiving party must have knowledge of all the facts. As stated in Henry Prentiss & Co. v. United States, 46 Fed. (2d) 159: "An essential element of waiver is a conscious relinquishment of something that is known."

Knowledge of all the facts has been repeatedly held by this court to be essential if the demand for and acceptance of premiums is to be construed as a waiver of the terms of the insurance contract. American Bankers Insurance Co. v. Thomas, 53 Okla. 11, 154 P. 44; Pacific Mutual Life Insurance Co. v. O'Neill, 36 Okla. 792, 130 P. 270.

A further reason for holding that these acts do not constitute waiver is the fact that the notice itself plainly stated that the sending thereof was not to be construed as modifying the terms of the contract, and that no payments made in pursuance of the notice should be valid if the policy were not in effect at the time of such payment.

For another reason, the evidence showed that the sending of such notice was a mere matter of routine for the benefit of the policyholders. It is also worthy of note that the company did not retain the premium which plaintiff forwarded, but returned the same as soon as its inadvertent mistake was discovered, which was within two days of the receipt of the remittance.

It may be stated in this connection that there is an important distinction between nonpayment of the first premium and nonpayment of the second and following premiums, in cases like the present. In such cases the payment of the first premium is made a condition precedent to the effectiveness of the policy, whereas the payment of following premiums is a condition subsequent. While a court, on equitable principles, may go far in relieving against forfeiture by failure to perform a condition subsequent, even equity cannot bring into being a contract which had no prior existence.

Thus, in applying the above principle to oil and gas leases, this court said in Paraffine Oil Co. v. Cruce, 63 Okla. 95, 162 P. 716 (syllabus 5):

"Precedent conditions must be literally performed, and even a court of chancery will never vest an estate, when, by reason of a condition precedent, it will not vest in law. It cannot relieve from the consequences of a condition precedent unperformed."

Our conclusions on this proposition find support in two analogous cases from federal jurisdictions. In Curtis v. Prudential Insurance Company of America, 55 Fed. (2d) 97, the court said:

"The contention that the notice given of the payment due for the second quarter was a waiver of all conditions that existed with reference to the first payment is, we think, without merit. A notice of the second quarter's payment was issued from the home office of the company, and was a mere matter of routine carried out in compliance with the North Carolina law requiring notices to be sent out at a certain stated time before the due date. Certainly the purely mechanical act of sending out a notice by one department of a large insurance company having that duty to perform with respect to thousands of policies could not be considered to constitute a waiver of the two conditions that were here necessary to be performed before any contract existed, that is, payment of the first premium and the delivery of the policy. Under some circumstances, such a notice might be held to prevent the forfeiture of a contract already in effect, but certainly cannot be held to give life to a contract that never existed."

In Union State Bank & Trust Co. v. Northwestern Life Insurance Co., 55 Fed. (2d) 1070, the court said:

"An insurance company may waive any provision of the policy inserted for its benefit and may be estopped to deny that it has done so, provided the agents doing the acts relied upon to sustain estoppel are authorized to make the waiver or the company has ratified their action, with knowledge of the facts, and the insured is induced to rely upon the waiver. Glove Mut. Life Insurance Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387; Northern Assurance Co. v. Grand View Bldg. Ass'n, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213. Those conditions are not shown by the facts in this case. The premium notices themselves advised the insured that they were not to be construed as waiving any lapse of the policy. The letter of December 11th mailed after Raymond's death, without any knowledge of that fact on the part of the insurance company, could have no effect as a waiver. Furthermore, by the plain terms of the contract, none of the clerks or agents of the company, except the president and secretary, had any authority to create an estoppel such as is asserted. Aside from that, no act of the company or its agents or employees was prejudicial to the insured or induced him to act to his disadvantage.

"The plea of estoppel finds no support in the record. It was not error to direct a verdict for appellee."

Because of our foregoing conclusions, we are of the opinion that, as a matter of law, no insurance contract existed between A. L. Schrimsher and the defendant. A review of the evidence convinces us that this result is in accord with justice and equity.

There is no evidence whatsoever in the record that the insurance company or its agent ever represented to the applicant that the insurance was in force. On the contrary, the plain import of the evidence is that he and the company both considered that the policy had never gone into effect or that the applicant ever had any such belief. The son testified that his father had told him to look up his insurance and pay it, but it is not claimed that this statement referred to the policy in question. As the applicant had other insurance, as shown by the above-mentioned application (Mrs. Schrimsher also testified that he was carrying $15,000 with the New York Life Insurance Company, but she did not know whether it was still in force), these instructions quite apparently did not refer to the policy which is the subject of this case. Even the subsequent action of the son in consulting the agent, Kendall, before he sent in the premium appeared to be the conduct of one who was seeking an uncertain opportunity, rather than asserting a legal right.

This is obviously a case in which the policy was never paid for and thus never came into being as a binding contract. Although the courts have the duty of protecting policyholders in all of their rights, they cannot go so far as to force upon an insurance company a contract to which it had never agreed.

Our view of the case as above stated makes a discussion of the court's instructions unnecessary. However, we may observe that the trial court's instruction No. 3, of which the defendant complained, implies, if it does not state directly, that the charging of the first premium to the local agent constituted a waiver of the payment of the premium by the applicant. The instruction is thus in conflict with the rule of law set forth in Lyke v. American National Assurance Company, supra.

On account of the trial court's error in overruling defendant's motion for a directed verdict, the judgment must be reversed, and it is so ordered.

The Supreme Court acknowledges the aid of Attorneys Nathan Scarritt, H. C. Kirkendall, and Geo. D. Wilson in the preparation

of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Scarritt and approved by Mr. Kirkendall and Mr. Wilson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

OSBORN, C. J., BAYLESS, V. C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.