**ETENBURN, Adm'r, v. METROPOLITAN LIFE INS. CO.**

No. 16325—Opinion Filed March 16. 1926.

Rehearing Denied May, 18, 1926.

**1. Insurance—Life Policy—Essentials for Valid Contract.**

To constitute a valid and binding contract of life insurance, there must be a meeting of the minds of the parties as to all the material terms and provisions of the contract, including the amount and manner of the payment of the premium.

**2. Same—Payment of First Premium as Condition.**

Where the policy or contract of insurance provides that it is not to become effective until the first premium is paid to and accepted by the company during the life time of the insured, the payment of the first premium is a condition precedent; and, where the policy provides that only the proper officers at the home office of the company shall have power on behalf of the company to modify the contract of insurance or to bind the company by making any promises respecting any benefits under a policy issued, the soliciting agent of the company is without authority to waive the payment of the first premium.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Oklahoma County; William H. Zwick, Judge.

Action by E. E. Etenburn, Administrator of estate of Sarah Etenburn, against the Metropolitan Life Insurance Company. Judgment for defendant, and plaintiff brings error. Affirmed.

W. A. Smith, for plaintiff in error.

Embry, Johnson & Tolbert, for defendant in error.

Opinion by JARMAN, C. This was an action by E. E. Etenburn, administrator of the estate of Sarah Etenburn, deceased, against the Metropolitan Life Insurance Company, a corporation, to recover on a life insurance policy in the sum of $2.000 issued by the defendant to the decedent. Upon the conclusion of the evidence of the plaintiff, the court sustained a demurrer thereto and rendered judgment in favor of the defendant, from which the plaintiff has appealed.

The evidence on the part of the plaintiff discloses the following state of facts: The insured, Mrs. Sarah Etenburn, resided at Fayetteville, Ark. W. A. Booker was soliciting agent of the defendant. The insured carried two industrial policies with the defendant and Booker called at her home each week to collect the assessments or premiums thereon. During these trips he suggested to Mrs. Etenburn that she take additional life insurance, and she expressed her doubts as to being financially able to pay for additional insurance, but finally signed an application on December 13, 1922, for a policy in the amount of $2,000, and, upon receipt of the application at its home office, the defendant, by and through its proper officers, issued said policy and forwarded the same to its soliciting agent, W. A. Booker. Mrs. Etenburn had not made up her mind fully as to the kind of insurance policy she desired, and this was the condition at the time Booker left the policy with her. It is clear from the testimony of Helen Etenburn, daughter of the insured, who lived with her mother at the time of this transaction, that the policy for $2.000 was never intended to be delivered by Booker, and Mrs. Etenburn did not intend to accept the policy as an executed contract between the parties. The record discloses that Mrs. Etenburn had become interested in the proposition of taking additional insurance: and the execution of the application and the leaving with her of the policy were only steps taken for the purpose of aiding the negotiations for insurance and to enable Mrs. Etenburn to become fully acquainted with the terms and provisions of the proposed policy, in order that she might be in a position to determine the kind of policy she desired. With reference to the delivery of the policy and the circumstances under which the same was left with the insured. Helen Etenburn gave the following testimony:

"Q. What was it you said about him giving her the policy to look it over. A. He delivered it to her and told her that if there was anything in it—let me see, what was it, he said?—he said. **'I will let you keep this for a few days'**; and my mother asked him how it was to be paid, and he told her, by the year, and he told her how it was that it was to be paid. and she said, 'I would rather have it paid quarterly,' and he told her that he would leave it there a few days until she decided how she wanted to pay it. I am sure that is how it was."

It is clear from the foregoing testimony that the policy was left with the insured so she could consider it for a few days

and make up her mind whether the same suited her, to enable her to determine the exact nature and kind of policy she desired. The evidence discloses that Mrs. Etenburn did not approve the policy as delivered, and, in a few days, when Booker called at her home, she wanted the policy changed to provide for the payment of the premium in quarterly installments instead of an annual installment. Booker took up the policy and mailed the same to the main office of the defendant, and, at the same time, accepted a check from Mrs. Etenburn for the amount of the quarterly premium, and Booker represented that the insurance would be in full force and effect from that date. The check was protested for lack of funds, and the same was never paid. The original policy was canceled by the defendant and no other policy was ever executed or delivered. In a few days after the policy was returned to the company, Mrs. Etenburn was stricken with appendicitis and died after an operation.

The plaintiff contends that the policy was in full force and effect at the time of the death of Mrs. Etenburn, for the reason that she had given a check for the amount of the quarterly premium and the agent of the defendant had accepted the check and agreed to hold the same until the decedent made the necessary deposit to pay said check, and further agreed that the insurance should be in full force and effect; and the plaintiff contends that the cash payment of the quarterly premium was thereby waived by the agent.

The application, executed by the insured for the policy and which, according to the terms and provisions of the policy, is a part thereof, provides that no agent or any other person except the officers at the home office of the company, shall have power on behalf of the company to make or modify any contract of insurance or to bind the company by making any promises respecting any benefits under a policy issued, and provides further:

"4. That the company shall incur no liability under this application until it has been received, approved and a policy issued and delivered, and the full first premium stipulated in the policy has actually been paid to and accepted by the company during the lifetime of the applicant."

The contract of insurance, under which the plaintiff claims. specifically provides that no agent could make or modify any contract of insurance issued by the company, and that this power could be exercised only by the proper officers of the company at the home office. Section 4, above quoted, of the application, which, as heretofore stated, forms a part of the insurance contract, provides that the company would not be liable until the first premium stipulated in the policy shall have been paid to and accepted by the company during the lifetime of the applicant. The first premium, stipulated in the policy, was never paid, and under the terms and provisions of the application which the insured executed, she knew the agent had no authority to enter into any agreements that would vary or modify the terms providing for the actual payment of the first premium during her lifetime, which was necessary before there would be any liability for the insurance on the part of the defendant; therefore, the contract of insurance never became effective. As said by this court in the case of Bankers Reserve Life Co. v. Rice, 99 Okla. 184, 226 Pac. 324:

"If the policy provides that it should not become effective until the first premium is paid, the payment of the note (being a note given for the premium) is deemed a condition precedent. Arnold & Empire Mutual Annuity & Life Ins. Co., 3 Ga. App. 685, 60 S. E. 476."

We have heretofore seen that there was no binding contract of insurance in the first instance, for the reason there was never a meeting of the minds of the parties as to the terms and provisions of the contract of insurance and the amount of the premium. In this connection, the following rule was announced by the court in the case of Shawnee Mutual Fire Ins. Co. v. McClure et al., 39 Okla. 535, 135 Pac. 1150:

"To constitute a binding contract of insurance there must be a meeting of the minds of the parties with authority to contract as to the premises and the risk, the amount insured, the term the insurance is to continue, and the amount of the premium."

It necessarily follows, if there was no binding contract of insurance in the first instance, there can be no such thing as an extension of the insurance by verbal agreement of the agent.

No recovery could be had on the policy for two reasons: First, there was never any binding contract of insurance between the parties; second, the cash premium was never paid and the agent was without authority to waive the same.

The plaintiff makes the further contention that the insured did accept the policy as written and that the only change to be made in the policy was the manner of paying the premium, and that it was not necessary for a new policy to be issued, because the change could be made on the original policy as pro-

vided by section 5 of the application, as follows:

' "In the case of apparent errors or omissions discovered by the company in the foregoing application or in case the company shall be unwilling to issue a policy upon the plan or in the amount applied for, the company is hereby authorized to amend this application by noting the change in the space entitled 'Corrections and Amendments' and to prepare and submit a policy on a different plan or in a different amount from that hereby applied for, and I hereby agree that my acceptance of such policy, as so submitted, accompanied by a copy of the application so amended, shall operate as a ratification of such changes or amendments."

The plaintiff contends that, under this section of the application, the insured, of her own volition and on her own motion, could, at any time, have the policy modified or changed as to the manner of payment of the premium, and it was the duty of the company, upon the insured making such request, to note the change in the space on the policy. Plaintiff has misconstrued this section. The right to make changes is reserved to the company and not to the insured, and if, after making such changes, the insured accepts the policy as modified, said section 5 provides that the same shall operate as a ratification of such changes or amendments.

For the reasons given, the judgment of the trial court is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 32 C. J. pp. 1095, 1096 § 180. (2) 37 C. J. p. 403 § 77; p. 407 § 83. See under (1, 2) 14 R. C. L. p. 958; 3 R. C. L. Supp. p. 321; 4 R. C. L. Supp. p. 933.