J. F. OAKS, Appellant,

v.

MOTORS INSURANCE CORPORATION, a corporation, Appellee.

No. 50692.

Supreme Court of Oklahoma.

May 29, 1979.

David A. Cheek, McKinney, Stringer & Webster, Oklahoma City, for appellant.

Gibbon, Gladd, Clark, Barnes & Taylor, Tulsa, for appellee.

OPALA, Justice:

In this appeal from summary judgment for the insurer two questions must be answered: [1] was the insurance policy in suit effectively renewed beyond its last anniversary date without prepayment of premium? and [2] assuming an affirmative answer, had the policy been effectively cancelled before the casualty loss occurred?

Before expiration date [March 2] [1] of his then current policy, the owner [Oaks] of a tractor-truck [truck] received in the mail a renewal policy and premium notice extending his coverage for one year. Unable to make the premium payment on or before the anniversary date, Oaks contacted his insurance agent. As he testified by deposition, he was assured by the agent that if he made the payment by April 17 he would be within the "grace period". The insurer's claim to a summary judgment rests [a] on its assertion that the effectiveness of the renewal policy sued upon was contingent upon prepayment of premium and [b] on its cancellation notice for nonpayment of premium, allegedly mailed to Oaks on March

---

1. All dates refer to the year 1976.

17, to become effective April 8. The casualty for which recovery is sought occurred April 12.

## I

■ Insurer contends that under the policy terms Oaks was required to make premium payment "in advance" and thereby give insurer notice of his acceptance of the renewal which constituted "a mere offer". Insurer relies upon the following provision in the policy:

"The stock company, named in the declaration herein called the company, *in consideration of the payment of the premium,* in reliance upon the statements and the declarations made a part hereof, and subject to all the terms of this policy, agrees with the named insured as follows:" [Emphasis added]

We cannot agree. The cited language is non-specific and too general to support the contention. It discloses no terms making prepayment of premium, in whole or in part, a condition precedent to the policy's validity.[2] Nor does it contain any terms fixing the time when payment, or any part of it, was to become due.

■ Absent a valid collateral agreement to the contrary, where a written contract fails to designate the time for payment, the law will imply a reasonable time.[3]

■ Deposition testimony indicates here that both written and oral communications between Oaks and the insurance agent may have led to an agreement as to a premium payout plan and as to the time for making the first installment payment. If Oaks' promise to pay his premium in installments had in fact been accepted by one with authority so to do before the loss in suit occurred, there was clearly sufficient consideration for a binding insurance contract.[4] Failure of insurer to receive premium payment before the loss on April 12 [a fact which is admitted by the insured] is not material to the controversy here. If the policy was in effect because the insurer had accepted Oaks' promise to pay, nonpayment of premium before the loss would not be fatal to recovery. Oaks would, of course, remain liable for any installment payment that may have been due under the agreed payout plan. Whether the insurer did accept Oaks' promise to pay and whether there was a binding collateral agreement to that effect, oral or written, are clearly fact issues that may not be resolved on motion for summary judgment.

Insurer also contends that any authority its agent may have had to extend time for payment of premium on renewal of the policy was limited by a certain express provision in the policy.[5]

■ Though the powers of an agent may be limited by definite restrictions on his authority, the determination of their extent and consequently of the rights of the insured must rest, in the final analysis, on the principle that such powers are prima facie coextensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the person with

---

2. By the terms of the insurance contract, it may be provided that the policy shall not take effect until the premium is paid. A stipulation to this effect is enforceable as a condition precedent to coverage because compliance with its provision is essential to render the contract binding as to coverage. Absent an express provision to the contrary, prepayment of the premium is not essential to the validity of policy contract. *Etenburn v. Metropolitan Life Ins. Co.,* 118 Okl. 55, 246 P. 383, 384 [1926]; *Atlas Life Ins. Co. v. Schrimsher,* 179 Okl. 643, 66 P.2d 944, 946 [1937].

3. *Nations v. Stone,* 92 Okl. 18, 217 P. 1031, 1033 [1923].

4. *Inland Refining Co. v. Langworthy,* 112 Okl. 280, 240 P. 627, 629 [1925].

5. Policy provision relied upon by insurer to restrict actions of its agent is:

"Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy."

whom he deals.[6] The policy, silent as to the time for payment of premium, did not put Oaks on notice as to any limitation on agent's authority. The ultimate question is not what power the agent had, but what power the company had held him out as having. This, too, is a fact issue to be resolved by the trier.

The policy clearly does not require prepayment of premium as a condition of its validity. Moreover, the insurer's act of sending the cancellation notice, relied on for summary judgment, reinforces the insured's position that the policy was effective past the renewal date because the insurer had in fact accepted his deferred premium payment plan. The new policy period began March 2 and insurer's alleged cancellation was not made effective until April 8. This surely presupposes that the policy had been deemed to be in force, without any premium payment, at least from March 2 to April 8.

## II

Neither can the pre-loss cancellation, notice of which was allegedly mailed pursuant to express policy provision, afford here a basis for summary judgment. Oaks and his loss payees[7] denied ever receiving a copy of that notice.

 The burden was on the insurer to prove the fact of mailing cancellation notice to Oaks at the address shown in the policy.[8] Its affidavit did not meet that burden.[9] Aside from negating delivery, proof of no receipt also may raise an inference of non-

mailing[10] and thus serve to controvert insurer's alleged compliance with the policy provision[11] that requires the mailing of notice. Even if insurer's affidavit had contained sufficient facts to meet its burden here, there was still enough evidence tending to negate the mailing of notice to present "a genuine controversy" as to its occurrence. In short, the fact of mailing notice, negated here by the testimony of nonreceipt from Oaks and the two loss payees, presents an issue for the trier.

 A genuine controversy does exist as to whether the policy was effective at the time of the casualty loss and as to the mailing of notice that is said to have cancelled the policy effective April 8. We accordingly reverse the summary judgment and remand the cause for proceedings not inconsistent with our views.

LAVENDER, C. J., and WILLIAMS, HODGES, BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

---

6. *Home State Bank of Hobart v. Sullins*, 198 Okl. 314, 178 P.2d 86, 88 [1947]; *Farmers Nat. Grain Corporation v. Young*, 187 Okl. 298, 102 P.2d 180, 185 [1940].

7. Lending institution and seller with recourse.

8. *Midwestern Insurance Co. v. Cathey*, Okl., 262 P.2d 434 [1953]; *Richardson v. Brown*, 443 F.2d 926 [10th Cir. 1971].

9. Insurer's affidavit does not include the essential facts necessary to establish proper mailing.

10. When a letter is sent by post, properly addressed, a prima facie presumption of its delivery to the party to whom it is addressed, which

arises from it, *may be overcome by contradictory evidence. Liberty Plan Company v. Francis T. Smith Lumber Company*, Okl., 360 P.2d 500, 504 [1961].

11. Section 11 of the insurance policy provides in part:
"* * * This policy may be cancelled by the company by mailing to the named insured at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. * * *"