1998 OK 88

James E. SHAMBLIN, Plaintiff/Defendant on Counterclaim–Appellee,

v.

Allen BEASLEY and Helen J. Beasley, husband and wife, Port Duncan Realty Company, Port Duncan Owners' Association, and Estey Cabinet Door, Defendants/Counterclaimants–Appellants.

No. 88965.

Supreme Court of Oklahoma.

Sept. 15, 1998.

As Corrected Jan. 28, 1999.

Tommy R. Dyer, Jr., Davis & Thompson, Jay, Oklahoma, for Appellants.

Richard D. James, W. Neil Wilson, Wallace, Owens, Landers, Gee, Morrow, Wilson, Watson & James, Miami, Oklahoma, for Appellee.

OPALA, Justice.

¶ 1　The three dispositive issues presented on certiorari are: (1) Does the evidentiary material in the record provide undisputed proof that the service of statutory pre-sale notice on the wife-owner by delivery to her husband satisfies the fundamental law's due process standards? (2) Do the alleged irregularities in the publication notice invalidate the tax resale? and (3) Does the evidentiary material tendered by the lender at nisi prius raise a fact issue on the merits of the controversy which was not fit for disposition by summary process? We answer the *first* and the *third* questions in the affirmative and the *second* in the negative.

**I**

**THE ANATOMY OF LITIGATION**

¶ 2　The spousal possessors, Allen and Helen Beasley [counterclaimants, former or spousal owners, or husband and wife], had failed to pay ad valorem taxes on their home-

stead, which was sold to the county at a delinquent tax sale.[1] Unredeemed from the lien of ad valorem tax for more than two years, these premises were acquired at a tax resale by the plaintiff below, James Shamblin [Shamblin, plaintiff or purchaser].[2] Two months after the resale tax deed was executed, the purchaser brought a claim *to quiet his title* in the premises against the delinquent spousal owners still in possession and the mortgage lender, Port Duncan Realty Co., and *for ejectment* of the spousal defendants from the land.[3] By their separate counterclaims both the *possessors and the mortgage company* (the latter acting through its owner, Roger Laubach [lender]) mount an attack on the plaintiff's muniment of title—the resale tax deed—to bring about its judicial cancellation. The challenge rests on the county's failure to comply with the statutory pre-sale notice requirements.[4] The trial court *gave summary judgment* to the purchaser and *denied* the three defendants' joint quest for like relief. According to the trial court's ruling (a) the pre-sale notice to each of the defendants is sufficient as a matter of law, (b) the county treasurer was required to do no more than give notice by publication and by certified mail, (c) even though the treasurer had in fact requested both, there is *no statutory* requirement either for a *return receipt* or for *restricted delivery*, (d) although

1. For the statutory regime governing tax sales, see 68 O.S.1991 §§ 3101 et seq. Unpaid ad valorem taxes become a lien against the entire fee of the delinquent owner. 68 O.S.1991 § 3101. The lien attaches when the tax is due, and unless redeemed, the property is subject to sale in satisfaction of the tax liability. 68 O.S. 1991 §§ 3105, 3106. When no bids are received at the original tax sale, the property stands sold to the county by operation of law. 68 O.S.1991 § 3108. *Dearing v. State ex rel. Com'rs of Land Office*, 1982 OK 5, 642 P.2d 226, 228–229. For recent appellate discussion of the interests that would be entitled to notice in tax resale proceedings, see *Stottlemyre v. Haworth*, 1998 OK CIV APP 31, 957 P.2d 131; *Kester v. Ives*, 1998 OK CIV APP 109, 960 P.2d 865. For the provisions that govern service before a tax deed is issued, see *Berkeley Federal Bank & Trust v. Selby*, 1998 OK CIV APP 102, 969 P.2d 369.

2. The terms of 68 O.S.1991 § 3125 are:

"If any real estate purchased by the county at delinquent tax sale *shall remain unredeemed for a period of two (2) years from date of sale*, and no person shall offer to purchase the same for the taxes, penalty and costs due thereon, the county treasurer shall proceed to sell such real estate at resale, which shall be held on the second Monday of June each year in each county." (Emphasis supplied.)
*See, e.g., Federal Land Bank of Wichita v. American Bank & Trust Co.*, 1991 OK 91, 823 P.2d 359, 360.

3. The quiet title suit also names two other parties as defendants in the case, Port Duncan Owners' Association and Estey Cabinet Door, *who are not appellants herein* (the purchaser's summary judgment brief informs the court that these defendants are either in default or have filed their disclaimers in the case).

4. The pertinent terms of 68 O.S.1991 § 3127 are:

"The *county treasurer shall give notice of the resale* of such real estate *by publication* .... Such notice shall contain a description of the real estate to be sold, the name of the owner of said real estate as shown by the *last tax rolls in the office of the county treasurer*, the time and *place of sale*, a statement of the *date on which said real estate was sold to the county for delinquent taxes*, the *year or years for which taxes have been assessed but remain unpaid* and a statement that the same *has not been redeemed for the period of two (2) years from the date of sale*, the total amount of all delinquent taxes, costs, penalties and interest accrued, due and unpaid on the same, and a statement that such real estate will be sold to the highest bidder for cash. It shall not be necessary to set forth the amount of taxes, penalties, interest and costs accrued each year separately, but it shall be sufficient to publish the total amount of all due and unpaid taxes, penalties, interest and costs. The county treasurer shall, at least thirty (30) days prior to such resale of real estate, *give notice by certified mail, by mailing to the owner of said real estate*, as shown by the last tax rolls in his office, *and to all mortgagees of record* of said real estate a notice stating the time and place of said resale and showing the legal description of the real property to be sold. If the county treasurer does not know and cannot, by the exercise of reasonable diligence, ascertain the address of any mortgagee of record, then the county treasurer shall cause an affidavit to be filed with the county clerk, on a form approved by the State Auditor and Inspector, stating such fact, which affidavit shall suffice, along with publication as provided for by this section, to give any mortgagee of record notice of such resale. Neither failure to send notice to any mortgagee of record of said real estate nor failure to receive notice as provided for by this section shall invalidate the resale, but the resale tax deed shall be ineffective to extinguish any mortgage on said real estate of a mortgagee to whom no notice was sent...." (Emphasis supplied).

the defendants maintained in their affidavits that they did not receive actual notice, the treasurer complied with all statutory requirements and (e) none of the defendants' due process rights was violated. The Court of Civil Appeals affirmed.

## A.

### Tax Resale Purchaser's Plea For Summary Judgment

¶ 3 The purchaser's suit is based on his claim to a superior title acquired by resale tax deed, which operates in law to extinguish the spousal owners' and the lender's statutory opportunity for redeeming the land from ad valorem lien. There is no dispute that the husband signed both the receipt for the notice-bearing certified mail directed to his wife as well as for that which was addressed to him.[5] Nor is it challenged that the lender's grandson executed the receipt for the notice-bearing certified mail sent to the mortgage company.[6] Purchaser maintains that the proceedings leading toward the county treasurer's execution of the resale tax deed substantially comply with the statutory prerequisites and provide prima facie evidence of the transaction's validity. The only issue, he urges, is whether the service effected (on the wife and on the lender) in the framework of the procedure employed complies with the notice requirements of due process. It is the purchaser's position that the tax resale notice that was to be effected by certified mail directed to each of the spousal owners and to the lender, which called for restricted delivery and return receipt, passes muster under the constitutional mandate for "reasonable probability" that the defendant will receive actual notice.[7]

## B.

### Former Owners' Counterclaim and Their Summary Judgment Quest

¶ 4 The spousal defendants argue several affirmative defenses to defeat the purchaser's suit. According to their joint answer, the wife's due process rights were violated because (a) she failed to receive "actual notice" of the resale and (b) her notice of resale, given by certified mail, went to the husband, who *neither* delivered the critical letter to her *nor* informed her of the impending sale.[8] *Both spouses* claim the sale is fatally tainted by irregularities because the published notice (a) *fails* to inform them of the location of the sale, (b) *states* that the property was being sold under certain cited statutory provisions which had been renumbered in a subsequent official compilation and were no longer in force, (c) *fails to include* the date the property was sold to the county for delinquent taxes [9] and (d) *improperly refers* to the 1991, 1992 and 1993 tax rolls, rather than to the "last tax rolls in the treasurer's office".[10] Spousal defendants, who aver in their counterclaim that the resale tax deed is void for all the reasons stated in their answer, seek to have their own title quieted.

¶ 5 In support of their quest for relief by summary process, husband and wife submitted separate affidavits. According to that of the *wife* (a) her husband failed to deliver to her the notice of sale that was mailed by the county treasurer in an envelope addressed to her, (b) she did not receive "actual notice" that her home was to be sold for delinquent taxes on 10 June 1996, (c) her husband was not an authorized agent to sign the receipt for certified mail directed to her or to acknowledge her receipt of the notice from the county treasurer and (d) her husband did not

---

**5.** The purchaser—plaintiff below—*does not dispute* that the husband had accepted service for the wife. There is *no returned post office paperwork* in the record.

**6.** Neither does the record include the *returned post office paperwork* for the notice mailed to the lender.

**7.** For this constitutional norm the purchaser directs us to *Mennonite Bd. of Missions v. Adams,*

462 U.S. 791, 798, 103 S.Ct. 2706, 2711, 77 L.Ed.2d 180 (1983).

**8.** The record contains *no original post office returns.*

**9.** *See* the pertinent terms of 68 O.S.1991 § 3127, *supra* note 4.

**10.** *See* the pertinent terms of 68 O.S.1991 § 3127, *supra* note 4.

tell her about the sale of her home for delinquent tax liability until *after* the sale had been completed. The *husband's affidavit* states that (a) the certified letter addressed to him and that directed to his wife were both delivered to him at his jobsite (rather than at his residence),[11] (b) he was not aware of any attempt to serve the certified letter upon his wife, (c) he still has possession of the unopened notice-bearing envelope addressed to his wife, (d) his wife had neither appointed him as her agent nor authorized him to accept certified mail on her behalf, and (e) he and his wife do not file joint income tax returns; each of them bears individual responsibility for a self-assessment to be declared.

### C.

#### Lender's Counterclaim and Quest For Summary Judgment

¶ 6 The lender's affirmative defenses *are nearly identical* to those of the spousal defendants. He alleges that notice of the tax resale, delivered by certified mail, restricted delivery, and signed for by his grandson, Mike Laubach, does not satisfy the fundamental requirements of due process. Lender's counterclaim similarly argues that the resale tax deed is void and that, subject to lender's mortgage, the spousal defendants' title should be quieted.

¶ 7 According to the *lender's summary judgment affidavit,* his grandson (a) *picked*

11. According to the purchaser's brief on motion for summary judgment, the notices were delivered to the husband at the family home. Other evidentiary material tendered (a copy of the *unopened envelope* addressed to the wife but delivered to the husband) shows that the address on the wife's certified letter is a post office box number.

12. The word "merits" has a well-defined meaning in law. *See, e.g., Pryse Monument Company v. District Court of Kay County,* 1979 OK 71, 595 P.2d 435, 437–38 (when a case is terminated as time-barred, the disposition is "on the merits" because in that context the statute of limitations presents an affirmative defense against the claim).

13. Issues of fact or law *on the merits* are typically raised by the pleadings. The terms of 12 O.S. 1991 § 552 provide:

up the notice-bearing envelope from the mortgage company's post office box *but failed to deliver it to the addressee-lender,* (b) *is not* an officer or employee of the mortgage company and *was not expressly authorized to receive* mail on the lender's behalf, (c) *is* an employee of a building supply company *that shares a post office box* with the mortgage company and (d) *was not authorized to sign the receipt* for the notice of sale addressed to the lender which had called for restricted delivery to the addressee.

### D.

#### The Efficacy Of Facially Valid Service That Is Assailed As Fraught With A Hidden Infirmity Ordinarily Presents A Question Of Fact

¶ 8 The validity of service on the wife and on the lender presents here both a *matter of defense* against the purchaser's quiet title suit as well as a critical *"issue on the merits"* [12] in the respective parties' counterclaims.[13] What is *on or dehors the merits* depends on whether the issue at hand affects one or more elements of the claim for relief or any elements of the defense that stands interposed against the claim.[14] If a case tenders a *fact issue* on the merits of the controversy it is unfit for disposition by summary process.[15] The issue must be resolved by submission to the trier.[16] A resale tax deed, facially meeting the basic statutory

Issues arise on the pleadings, where a fact or conclusion of law is maintained by one party, and controverted by the other. There are two kinds. First, of law. Second, of fact.

14. *See, e.g., Pryse, supra* note 12.

15. The terms of 12 O.S.1991 § 557 provide:

All other issues of fact shall be tried by the court, subject to its power to order any issue or issues to be tried by jury, or referred as provided in this Code.

16. Trial is a judicial determination of *issues on the merits.* Practice, procedure and evidence are not embraced within the latter term, but are deemed matters "dehors the merits." *Roark v. Shelter Mut. Ins. Co.,* 1986 OK 82, 731 P.2d 389, 390 n. 2 (Opala, J. concurring); *Flick v. Crouch,* 1967 OK 131, 434 P.2d 256, 261.

prerequisites, cuts off the redemption opportunity for those affected parties who are not then under some legal disability.[17] Service that is facially valid, but *latently ineffective, is not impervious* to attack for an infirmity that lies beneath the record's surface.[18] A challenge launched under the provisions of 12 O.S.1991 § 1031[19] to the validity of service that is facially regular, though alleged to be fraught with a hidden defect, presents an issue of fact that must be resolved upon consideration of proof extraneous to the face of the record. The attack is timely if brought within three years.[20] The defendants' challenge to the validity of service was hence timely pressed.

## II

### STANDARD OF REVIEW FOR SUMMARY JUDGMENT

¶9 The focus in summary process is not on facts a plaintiff might be able to prove at trial (*i.e.*, the legal sufficiency of evidence that could be adduced), but rather on whether the tendered evidentiary material, viewed as a whole, (a) *shows* undisputed facts on some or all material issues, which facts (b) *support* but a single inference that favors the movant's quest for relief.[21] Summary process—a special procedural track to be conducted with the aid of acceptable probative substitutes[22]— *is a search for undisputed material facts* that would support but a single inference which favors the movant. It is a method for identifying and isolating non-triable fact issues, not a device for defeating the opponent's right to trial. Only that evidentiary material which entirely eliminates from testing by trial some or all material fact issues will provide legitimate support for nisi prius use of summary relief in whole or in part. *All inferences to be drawn from the evidentiary material must be viewed in the light most favorable to the nonmoving party.*[23] The function of summary process is not to set the stage for trial by affidavit, but to afford a method of summarily terminating a case (or eliminating from trial some of its issues) when only questions of law remain.[24]

17. *Sherrill v. Deisenroth*, 1975 OK 136, 541 P.2d 862, 866–867; *Price v. Mahoney*, 175 Okl. 355, 53 P.2d 257, 258–259 (1935).

18. Facially valid service that is in fact ineffective may extend the redemption period as well as save one who is adversely affected from the legal consequences of a resale tax deed. *See Scoufos v. Fuller*, 1954 OK 363, 280 P.2d 720, 723; *Hough v. Hough*, 1989 OK 65, 772 P.2d 920, 921.

19. The pertinent terms of 12 O.S.1991 § 1031 are:

"The *district court shall have power to vacate or modify its own judgments* or orders within the times prescribed hereafter:
* * *
Third. For mistake, neglect or omission of the clerk or *irregularity in obtaining a judgment or order.* * * *" (Emphasis supplied.)

20. The pertinent terms of 12 O.S.Supp.1993 § 1038 are:

"* * * *Proceedings to vacate* or modify a judgment, *decree* or order, ... for the causes mentioned in paragraphs 3 and 6 of Section 1031 of this title, *shall be within three (3) years ....* A void judgment, decree or order may be vacated at any time, on motion of a party, or any person affected thereby." (Emphasis supplied.)
*See also Scoufos, supra* note 18 at 723.

21. *Hulsey v. Mid–America Preferred Ins. Co.*, 1989 OK 107, 777 P.2d 932, 936 n. 15. An order that grants summary relief disposes solely of law questions. It is hence reviewable *de novo.* An appellate court claims for itself plenary, independent and nondeferential authority to re-examine a trial court's legal rulings. *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, 859 P.2d 1081, 1084. Oklahoma's summary process is similar, but not identical, to that followed in the federal judicial system. *See Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

22. " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson v. Oklahoma Memorial Hosp.*, 1995 OK 112, 909 P.2d 765, 773 n. 35; *Gray v. Holman*, 1995 OK 118, 909 P.2d 776, 781 n. 16 (quoting from *Seitsinger v. Dockum Pontiac Inc.*, 1995 OK 29, 894 P.2d 1077, 1080–81); *Davis v. Leitner*, 1989 OK 146, 782 P.2d 924, 926–27.

23. *Carmichael v. Beller*, 1996 OK 48, 914 P.2d 1051, 1053.

24. *Russell v. Board of County Com'rs, Carter County*, 1997 OK 80, 952 P.2d 492, 503; *Bowers v. Wimberly*, 1997 OK 24, 933 P.2d 312, 316; *Stuckey v. Young Explor. Co.*, 1978 OK 128, 586 P.2d 726, 730.

Summary process applies in a like manner to issues that are tendered in legal as well as in equitable claims (or counterclaims).[25]

## III

## THE WIFE CANNOT SUCCEED IN SECURING A SENTENCE OF NULLITY FOR THE SERVICE EFFECTED BY THE HUSBAND'S ACCEPTANCE OF THE NOTICE–BEARING ENVELOPE ADDRESSED TO HER AS ONE OF THE DEFENDANTS IN THE CASE

¶ 10 *Both* spousal owners seek *to reinstate the legal redemption period by setting aside the tax resale.* One of the wife's affirmative defenses (and her counterclaim) must stand or fall on the adequacy of personal notice to her by service of process effected on the husband. *The remainder* of spousal defenses, which are joint, rests on the validity of the published notice, whose content is alleged not to comport with the statutory requirements.

**25.** For application of summary relief, Rule 13, Rules for District Courts of Oklahoma, 12 O.S.Supp.1993, Ch. 2, App., whose terms govern summary process, makes no distinction between legal and equitable actions. Other jurisdictions, much like Oklahoma, do not differentiate—for summary judgment purposes—between equity suits and actions at law. *See City of Savage v. Varey,* 358 N.W.2d 102, 105 (Minn.App.1984)(citing *Forsblad v. Jepson,* 292 Minn. 458, 195 N.W.2d 429, 430 (1972)); *Cloverlanes Bowl, Inc. v. Gordon,* 46 Mich.App. 518, 208 N.W.2d 598, 602 (1973); *Spencer v. Leone,* 420 S.W.2d 685, 687 (Ky.1967); *Fisher v. Hargrave,* 318 Ill.App. 510, 48 N.E.2d 966, 970 (1943).

**26.** The notions of agency were inadvertently injected into the field of service of process through language used in legislation—such as that found in statutes pertaining to notice of service on nonresident motorists. Nonresident motorist legislation *named* certain persons (or officials) *as agents to accept service for others. See, e.g., Wuchter v. Pizzutti,* 276 U.S. 13, 19, 48 S.Ct. 259, 260–61, 72 L.Ed. 446, 57 A.L.R. 1230 (1928); *Hess v. Pawloski,* 274 U.S. 352, 356, 47 S.Ct. 632, 633, 71 L.Ed. 1091 (1927); *Stoner v. Higginson,* 316 Pa. 481, 175 A. 527, 531–535 (1934).

**27.** The RESTATEMENT (SECOND) OF AGENCY § 1 defines agency as "... the fiduciary relation which results from the manifestation of consent by one

## A.

### *The Principles Of Agency Law Do Not Govern The Constitutional Quality of Notice Served Through Another*

 ¶ 11 The binding effect that acceptance of service by one person for another may have on the latter, although often characterized in terms of agency,[26] is not truly governed by the principles of agency law,[27] but rather by constitutional norms that shape the quality of notice that is one's due. A person *statutorily appointed* to receive service for another is not a true agent within the meaning of agency law.[28] For the rules of agency to come into play, the "representation" of one person by another must be intended to affect the principal's legal position.[29] *The wife's challenge to service in this case does not call for a test based on agency rules; rather, it raises the constitutional question of whether, in the context of this litigation, one spouse's receipt of notice directed to another may be binding on the other spouse as the latter's "actual notice".*

person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Gray v. Holman,* 1995 OK 118, 909 P.2d 776, 779. For a history of English agency law, see B.S. Markesinis and R.J.C. Munday, AN OUTLINE OF THE LAW OF AGENCY 12 (Butterworths 3d ed.1992).

**28.** *See* RESTATEMENT (SECOND) OF AGENCY § 1, comment f, which states that "[w]hether the word 'agent' as used in a statute corresponds to the meaning here given depends, with other factors, upon the purpose of the statute. Thus, the purpose of statutes providing for substituted service of process on a public official is to satisfy the due process requirement of the United States Constitution. *Although such a statute may label the public official an 'agent' for receiving service of process, he is not an agent in the sense used herein [the law of agency]. He is not in fact designated by the one on whose account he 'accepts service', nor does he respond to that person's directions....* " (Emphasis supplied.)

**29.** *Markesinis, supra* note 27 at 12. Agency, which generally deals with one person representing another in a transaction, is a "contract by which one person, with greater or less discretionary powers, undertakes to represent another in certain business relations." F. Wharton, AGENCY AND AGENTS (1876).

## B.

### Notice Must Pass Muster Under The Criteria of Due Process

¶ 12 Service is not subject to invalidation for *any departure* from the mode prescribed by statute. When it is alleged that there was want of strict compliance with statutory requirements for service, the court must in every case determine whether the found departure offends the standards of due process and thus may be deemed to have deprived a party of its fundamental right to notice.[30] Notice is a jurisdictional requirement and a *sine qua non* element of due process.[31] The latter notion requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections.[32] As the Constitution inexorably commands, no one's rights may be adversely affected in the absence of due and timely notice that affords a full and fair opportunity to defend.[33] The right to be heard is of little value unless a party is fairly and timely apprised of what interests are sought to be affected by process that is triggered.[34]

## C.

### The Reasonable Probability That The Person Who Was Not Individually Served Will Receive Actual Notice By One Who Accepted Service For Another

¶ 13 Failure to open *delivered certified mail* containing vital notice is not by itself a vitiating infirmity in the course of imparting knowledge that is the addressee's due. So long as the notice-giving process does not fall below the standard of that which is due, it is not subject to invalidation.[35] When it is tested by the gauge of due process, judicial approval (or condemnation) of the husband's receipt of notice directed to his wife must depend on whether in the context of the case there is a *reasonable probability* that the person who was not individually served will receive actual notice from one by whom service was accepted.[36] A find-

---

**30.** *Luster v. Bank of Chelsea*, 1986 OK 74, 730 P.2d 506, 510.

**31.** *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–15, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). *See also Bailey v. Campbell*, 1991 OK 67, 862 P.2d 461, 469; *Norman v. Trison Development Corp.*, 1992 OK 67, 832 P.2d 6, 9–10; *Cate v. Archon Oil Co.*, 1985 OK 15, 695 P.2d 1352, 1356; *Jackson v. Ind. School Dist. No. 16 of Payne Co.*, 1982 OK 74, 648 P.2d 26, 30; *Bomford v. Socony Mobil Oil Co.*, 1968 OK 43, 440 P.2d 713, 718.

**32.** *Mullane, supra* note 31, 339 U.S. at 314, 70 S.Ct. at 657. Due process is violated by the mere act of exercising judicial power upon process *not reasonably calculated* to apprise interested parties of the pendency of an action. *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971); *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Schroeder v. New York*, 371 U.S. 208, 211, 83 S.Ct. 279, 281, 9 L.Ed.2d 255, 89 A.L.R.2d 1398 (1962); *Riverside & Dan River Cotton Mills v. Menefee*, 237 U.S. 189, 35 S.Ct. 579, 59 L.Ed. 910 (1915); *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363, 1369 (1914); *Cate, supra* note 31 at 1356; *Bomford, supra* note 31 at 719. Due process requires adequate notice, a realistic opportunity to appear and the right to participate in a meaningful manner. Lack of notice constitutes a jurisdictional infirmity *Mullane, supra* note 31, 339 U.S. at 313–15, 70 S.Ct. at 656–57; *Bailey, supra*

note 31 at 469; *Cate, supra* note 31 at 1356; *Bomford, supra* note 31 at 718; *Pointer v. Hill*, 1975 OK 73, 536 P.2d 358, 361.

**33.** Federal constitutional jurisprudence teaches that an opportunity to be heard is an essential element of due process. *Mennonite, supra* note 7, 462 U.S. at 798, 103 S.Ct. at 2711 (the Court held that "[s]ince a mortgagee clearly has a legally protected property interest, [it] is entitled to notice reasonably calculated to apprise" it of the action); *Mullane, supra* note 31, 339 U.S. at 314, 70 S.Ct. at 657. Notice must be *reasonably calculated* to inform interested parties of the pending action and of every critical stage so as to afford them an opportunity to defend or to meet the issues at a meaningful time and in a meaningful manner. *Manzo, supra* note 32, 380 U.S. at 550, 85 S.Ct. at 1190.

**34.** At a bare minimum, legal notice must inform one of the antagonist's pressed demands and apprise one of the result consequent on default. *Mullane, supra* note 31, 339 U.S. at 314, 70 S.Ct. at 657; *Matter of Estate of Pope*, 1990 OK 125, 808 P.2d 640, 642; *Bomford, supra* note 31 at 718.

**35.** *Wuchter, supra* note 26, 276 U.S. at 24, 48 S.Ct. at 262.

**36.** *See Wuchter, supra* note 26, 276 U.S. at 24, 48 S.Ct. at 262, for the "reasonable probability"

ing of agency is neither critical nor indispensable to the constitutional standard for measuring the reasonable probability of actual notice reaching the intended party. *It is the totality of circumstances—not the particular norms of statutory requirements—that dictates the quality of service necessary to safeguard an individual's property interest at stake.*[37]

## D.

### *Service Effected On A Member Of One's Household Is Recognized As Valid*

¶ 14 Legislation in force since statehood recognizes as effective that service which was made on a member of one's household by leaving a copy of the process with any person (15 years or older) who is then residing at the "dwelling house" or "usual place of abode" of the person to whom process is directed. *See* the provisions of 12 O.S.Supp.1996 § 2004(C)(1)(c)(1)[38] The statute also provides that an appointment may be made by the addressee or "by law" for acceptance of service for another. *This provision represents our legal system's longstanding confirmation that effective service need not be made exclusively on one to whom process is addressed.*[39] The conceptual underpinning for the provisions of § 2004(C)(1)(c)(1) is not in a notion of agency or of kinship (by consanguinity or affinity), but rather *in the law's perceived bond by cohabitation in a common dwelling.*[40] The test we apply today has the very same underpinning. The constitutional norms of quality are not dependent on *where* service was effected on another. The fundamental-law test is based on the *reasonable probability*[41] that

standard of notice. There, the Court held that the statute which provided for substituted service upon the secretary of state for nonresident or departed resident motorists, without more, violated federal due process standards. The Court reasoned that the statute's omission of a provision making it *reasonably probable* that a defendant would receive actual notice invalidated the notice-shaping law. Under the Wuchter rule, "if the statutory provisions in themselves indicate that there is *reasonable probability* that if the statutes are complied with, the defendant will receive actual notice," the service of process will be sustained. *Id.,* 276 U.S. at 24, 48 S.Ct. at 262.

**37.** The quality of notice is gauged by constitutional norms, not by legislative language. *Mennonite, supra* note 7, 462 U.S. at 795, 103 S.Ct. at 2711; *Mullane, supra* note 31, 339 U.S. at 314, 70 S.Ct. at 657; *see also Federal Land Bank, supra* note at 361; *Luster, supra* note 30 at 510.

**38.** The pertinent provisions of 12 O.S.Supp.1996 § 2004(C)(1)(c)(1) are:

"* * * C. BY WHOM SERVED: PERSON TO BE SERVED.
1. SERVICE BY PERSONAL DELIVERY
* * *
c. Service shall be made as follows:
(1) Upon an individual other than an infant who is less than fifteen (15) years of age or an incompetent person, by delivering a copy of the summons and of the petition personally or by leaving copies thereof at the person's dwelling house or usual place of abode with some person then residing therein who is fifteen (15) years of age or older or by delivering a copy of the summons and of the petition to an agent authorized by appointment or by law to receive service of process; * * * "

**39.** The legislative predecessor of § 2004(C)(1)(c)(1) came with territorial legislation. It became state law in 1907. The terms of that statute, § 3938, St. 1893, provided that "the service shall be by delivering a copy of the summons to the defendant personally, or by leaving one at his usual place of residence, at any time before the return day." *See Theison v. Brown,* 11 Okl. 118, 65 P. 925, 926 (1901). The statute was amended in 1910 to provide (§ 4711, R.L.1910) that "[t]he service shall be made by delivering a copy of the summons to the defendant personally or by leaving one at his usual place of residence with some member of his family over fifteen years of age, at any time before the return day." *See Jackson v. Smith,* 83 Okl. 64, 200 P. 542, 543 (1921) (in an action to set aside a sheriff's deed and to redeem certain lands, the court held that service was validly effected by leaving a copy of the summons at the defendant's usual place of residence with his daughter-in-law, then over the age of 15 years and permanently residing in the home).

**40.** There is no notion of agency in Oklahoma's statutory service scheme that antedates the 1984 Pleading Code. The acceptance of service for another, when effective, is treated as a *juristic act—one that bears legal consequences for another, rather than the other's delegated act.* A juristic act is designed to have a present legal effect. It is an act by a private individual directed to the origin, surrender or alteration of a right. *See Gates v. P.F. Collier, Inc.,* 378 F.2d 888, 896 (9th Cir.1967); *Evans v. Wilson,* 776 S.W.2d 939, 940 (Tenn.1989).

**41.** *See Wuchter, supra* note 26, 276 U.S. at 24, 48 S.Ct. at 262, for the "reasonable probability" standard of notice.

the person to whom service is directed *will receive actual notice* from one who accepted service for another as the latter's lawful designee. The service in this case is to be treated as within the guidelines prescribed by § 2004(C)(1)(c)(1) and of the general policy expressed in it.

## E.

### *The Combined Components Of Notice–Giving Process In Contest Militate In Favor Of Concluding That Service Of Wife's Notice On The Husband Does Not Offend The Minimum Standards Of Due Process*

¶ 15 The *commonality of the affected owners' interests*—both in the *conjugal* as well as in the property *ownership regime* sense—is critical in ascertaining whether, consistently with the "reasonable probability" test, service on the husband will in this case be deemed binding on his wife. Among the circumstances to be considered here are the following *combined components:* (a) the existence of spousal status (the owners' matrimonial bond), (b) their joint ownership of the property in question, (c) the fact that by the legal impact of proceedings for tax resale their respective interests were affected alike, (d) the *notice* was critical and beneficial to the preservation of *both spousal owners' interests*, (e) the fact of their cohabitation, at the critical time in question, by maintaining a joint residence in a common dwelling, and (f) the property's homestead status. Another important factor to be weighed here *is the absence of allegation* in any of the spouses' affidavits that at the time material to the notice the spousal owners were either *estranged* or *living separately from one another,* or that they otherwise stood, with respect to the property interest in litigation, in a position antagonistic to one another.

¶ 16 We hence apply the totality-of-circumstances test to conclude that there was here a *reasonable probability* that if the service of process directed to the wife was accepted and signed by the husband on her behalf, the nonreceiving spouse will be afforded actual notice of the pendency of the tax resale. The notice served on the husband was beneficial to the preservation of both spousal parties' interests in the then commonly owned and possessed property, and the impact of the then-impending tax resale upon their individual interest was identical.[42] In sum, the service on the wife through her husband does not fall here below the minimum standards of process that was her due.

¶ 17 The wife—having tendered no fact issue in this case which would overcome the presumption of regularity in the service of process made through the husband—is not entitled to a judicial declaration that would relieve her of the legal consequences flowing from the husband's acceptance of service for her. It follows that the critical resale tax deed did extinguish *both* spousal owners' equity of redemption. *Today's holding is not to be enlarged by reading into it the principle that the wife would be bound by service delivered to the husband in a context other than the circumstances presented by this case.*

## IV

### ALLEGED IRREGULARITIES IN THE PUBLICATION NOTICE ARE INSUFFICIENT TO INVALIDATE THE TAX RESALE

¶ 18 The counterclaimants argue that because the tax resale is fatally tainted by irregularities in the text of the published statutory notice of tax resale, it should be invalidated and the deed canceled under the doctrine of *strictissimi juris.*[43] According to their argument, the published notice (a)

---

42. Where, on the other hand, no notice is ever sent, the reasonable probability is that the defendants may not be informed of the action until a judgment is obtained and then attempted to be enforced. *Schroeder, supra* note 32, 371 U.S. at 212–213, 83 S.Ct. at 282–283 (the Court concluded that publication in a newspaper and by posting notices was inadequate to apprise a property owner of condemnation proceedings' institution, when the condemnee's name (and address) was readily ascertainable from both the local deed records and the tax rolls).

43. For the *strictissimi juris* doctrine, counterclaimants cite *Sherrill, supra* note 17 at 867.

*failed* to identify the location of the resale, (b) *states* that the property was being sold under certain statutory provisions which had been renumbered in the official compilation and were no longer in force, (c) *failed to include* the date the property was sold to the county for delinquent taxes [44] and (d) *improperly refers* to the 1991, 1992 and 1993 tax rolls, rather than *to the date of the last tax rolls in the treasurer's office.*

¶ 19 The *attack on the notice* wrongly presupposes that *any deviation* from the statutory requirements renders the tax resale fatally defective.[45] The essence of notice in this case lies in its *effective warning* (to the affected parties) of the impending tax resale and in affording them a *timely opportunity* to redeem the property from the tax lien.[46]

¶ 20 The opportunity to redeem is unrelated to the geographical location of a sale; it hinges on the well-known public fact that the county treasurer's office is situated at the courthouse, where redemption rights may be exercised up until their extinction is brought about by the resale tax deed. This case is distinguishable from *Cate v. Archon,*[47] where personal notice of the execution sale's location was held to be essential. There, lack of that information deprived the judgment debtor of an opportunity to appear and to take

appropriate steps (by bidding in) before the affected property was irretrievably lost.[48] Moreover, it seems clear that the county treasurer's published notice—which states that a resale will be held "at the office of the County, State of Oklahoma"—has reference to the county offices whence the notice came.[49]

¶ 21 We conclude that none of the alleged irregularities is critical to the constitutional efficacy of the published notice.

## V

### LENDER'S AFFIDAVIT IN SUPPORT OF SUMMARY PROCESS RAISES A HOST OF FACT ISSUES FOR DETERMINATION AT TRIAL

 ¶ 22 Lender argues that his grandson was not authorized to receive process on behalf of the mortgage company and hence the service received by him fails to meet the minimum due process standards.[50] In essence, what the lender tenders is a *question of fact* concerning *facially valid service alleged to be fraught with a hidden infirmity* that vitiates the process.

 ¶ 23 Generally, a letter placed in the mail is presumed to have been received.[51]

---

**44.** *See* the pertinent terms of 68 O.S.1991 § 3127, *supra* note 4.

**45.** *Luster, supra* note 30 at 509 (the court noted that the focus of its inquiry into the adequacy of notice of a tax resale "is not whether the notice substantially complied with state statutory procedures; but rather, whether the notice satisfied the elementary and fundamental requirement of due process").

**46.** *Manzo, supra* note 32, 380 U.S. at 550, 85 S.Ct. at 1190; *Federal Land Bank, supra* note 2 at 362.

**47.** *Cate, supra* note 31.

**48.** After *Cate's* promulgation in 1985, *supra* note 31, the legislature amended the pertinent statutes to make them conform to due process. 12 O.S.Supp.1986 § 764 (1986 Okl.Sess.L. 227 § 3, eff. Nov. 1, 1986). *Here, the published notice of the 10 June 1996 resale faithfully tracks the due process requirements that are set out in the statute governing the quality of notice required to be given before an execution sale.*

**49.** The published notice identifies the *county treasurer* as the official who prepared, signed and submitted the tax resale notice for publication.

**50.** The terms of Art. 2, § 7, Okl. Const. are:

No person shall be deprived of life, liberty, or property, without due process of law.
State fundamental law requires that persons to be affected be given notice and an opportunity to be heard before any of their substantial rights may be altered or affected. *Crussel v. Kirk,* 1995 OK 41, 894 P.2d 1116, 1121; *Pope, supra* note 34 at 642–43; *Cate, supra* note 31 at 1355; *York v. Halley,* 1975 OK 51, 534 P.2d 363, 364; *Bomford, supra* note 31 at 719; *Shaw v. Swank,* 1966 OK 114, 416 P.2d 928, 931; *Kiespert v. Jenkins,* 1958 OK 92, 324 P.2d 283, 284; *Greco v. Foster,* 1954 OK 42, 268 P.2d 215, 219.

**51.** Generally, a letter placed in the mail is presumed to have been received. When a letter is sent by post, properly addressed, a prima facie presumption of its delivery to the party to whom it is addressed, which arises from it, may be overcome by contradictory evidence. *Oaks v. Motors Ins. Corp.,* 1979 OK 77, 595 P.2d 789,

To overcome the presumption here, the lender must show that the person who received the letter gained access to the box by intrusion rather than by means provided by the lender himself.[52] The original document returned by the post office is not in the record. *Sans* any paper trail documenting how the delivery was receipted, we can assume no more than that the letter was mailed to a correct address. But absent any proof in the record and any returned post office paperwork, we cannot likewise assume that it was mailed to the same address as that shown by the pertinent recorded instruments in the register of deeds' office.

■ ¶ 24 By affidavit stating that an intruder retrieved the certified letter addressed to the mortgage company, lender overcame the law's presumption that the critical notice-bearing letter mailed by the county treasurer was received by the addressee-defendant. Moreover, the lender's position is aided by the principle that his knowledge—that the ad valorem taxes were then delinquent—did not equate with notice that a tax resale proceeding had been instituted and the redemption opportunity would stand subject to extinguishment.[53]

■ ¶ 25 In the light of pertinent constitutional jurisprudence, among the material issues of fact tendered by lender's affidavit, which must be resolved by trial, are: (a) Was the mail in question directed to the lender's address shown on some recorded instrument or to any other place? (b) In whose name (or names) was the post office box registered? (c) Was the post office box rented by the entity to whom the letter was addressed or intended for delivery? (d) What was the lender's relationship to the person who retrieved the letter of notice from the post office box? (e) What means, if any, did the retriever use to secure the content of the lender's post office box? and (f) How did the letter's retriever obtain access to the box? Upon these material issues of fact the lender was entitled to an adversary hearing, and the county treasurer to an opportunity to refute the lender's denial-of-actual-notice scenario. This may be done by showing, among others, that the retriever's access to the box was gained either with lender-provided means or with his prior knowledge (or acquiescence). Although this contest over the quality of notice is litigated here within the framework of a purchaser's quiet title suit, the governing principles are the same as those which would apply in a suit for cancellation of the resale tax deed or in a contest over the efficacy of a judgment secured upon constitutionally infirm service.[54]

## VI

## SUMMARY

¶ 26 Based on the commonality of interests, *both* in the conjugal and in the property

---

792 n. 10; *Liberty Plan Co. v. Francis T. Smith Lumber Co.*, 1961 OK 30, 360 P.2d 500, 504; *Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 418, 76 L.Ed. 861 (1932)(there is a rebuttable presumption that any letter mailed in the ordinary course will reach its destination); C. McCormick, McCORMICK's HANDBOOK OF THE LAW OF EVIDENCE § 343 (1972)(a "letter properly addressed, stamped and mailed is presumed to have been duly delivered to the addressee"). Absent a contrary state of the record, we must assume that the returned post office paperwork, which was not included in the record (*supra* note 6), was regular on its face.

52. A finding that the retriever of the letter in question (the lender's grandson) is an *agent* for the lender is neither critical nor indispensable to the constitutional test for measuring the reasonable probability of actual notice reaching the intended party. *See supra* ¶ 11 of this text and the accompanying footnotes. It is the *totality of circumstances* that dictates the quality of notice constitutionally required to *safeguard the lender's*

*property interest. See supra* ¶ 13 of this text and the accompanying footnotes.

53. *Mennonite, supra* note 7, 462 U.S. at 800, 103 S.Ct. at 2712 (the Court held that "a mortgagee's knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending"); *Pope, supra* note 34 at 643. According to the purchaser's brief and affidavit in support of summary process, the county treasurer's file includes a note allegedly from the lender dated 10 July 1993, which states: "Thank you for your Notice of Delinquent Taxes on Lot 4, Block 5, Phase 1, Port Duncan. Please be advised that Port Duncan Realty Company declines to make payment of the delinquent taxes."

54. *See, e.g., Wells Fargo v. Ziegler*, 1989 OK 113, 780 P.2d 703 (lender's foreclosure action against mortgagor and tax resale purchasers, consolidated with tax resale purchasers' quiet title suit); *Phillips v. Thompson*, 1964 OK 18, 389 P.2d 473 (landowner's suit to cancel a resale tax deed and to quiet his title in the property).

ownership regime sense, the minimum due process standard for effective notice to the wife has been met. Service on her through the husband was not so wanting in the quality of process that was her due as to warrant the deed's cancellation. No facts tendered by the spousal owners' affidavits raise issues calling for a trial. *Absent from the wife's affidavit* are any allegations that, at the critical contest stage, either party-spouse stood in a posture adverse to the other with respect to the property interest at stake. The wife, having tendered no fact issue, may not secure a judicial declaration that would relieve her of the legal consequences attendant upon the service accepted for her by the husband.

¶ 27 The text of the published notice is free from any vitiating constitutional deficiency.

¶ 28 The lender's evidentiary material has raised a host of fact issues on the merits of the controversy, which must be resolved by trial. The dispute tendered is critical to resolving the question of whether the service on the lender meets the minimum standards of due process. *By today's pronouncement we are not declaring that service on the lender is legally infirm. What we hold is that summary process is unfit for disposition of the lender's attack on the service made on him.* Whether the letter addressed to the lender fell into the hands of an intruder or was retrieved by one to whom the addressee-lender had afforded the means of access to the box which was his chosen method for receiving mail presents a question for the trier.

¶ 29 On certiorari granted upon the counterclaimants' (spousal owners and mortgage lender) petition, the Court of Civil Appeals' opinion is vacated; the trial court's summary judgment is *affirmed only* (a) *insofar* as it adversely affects the title of spousal defendants and (b) *reversed insofar* as it adversely affects the interest of the lender; and cause is remanded for disposition of lender's defense and counterclaim in a manner not inconsistent with today's pronouncement.

¶ 30 KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER, HARGRAVE, OPALA, ALMA WILSON and WATT, JJ., concur.

¶ 31 SIMMS, J., concurs in judgment.

